# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Michael E. Romero

| | |
|---|---|
| In re:<br><br>Jorge Luis Mier Escobedo,<br><br>Debtor. | Bankruptcy Case No. 25-12572 MER<br><br>Chapter 7 |
| CHP 1010 McDowell, LLC, CHP Edwards Medical, LLC, CHP Metro North, LLC, CHP Scottsdale Medical Pavilion, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>James Costello Turpen<br><br>Defendant. | Adversary No. 25-1223 MER |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

THIS MATTER comes before the Court on the Motion to Dismiss filed by Defendant-Debtor James Trupen ("**Turpen**") and the response filed by Plaintiffs CHP 1010 McDowell, LLC, CHP Edwards Medical, LLC, CHP Metro North, LLC, CHP Scottsdale Medical Pavilion, LLC (collectively "**Plaintiffs**"), and Turpen's reply.[1] Turpen contends Plaintiffs have failed to adequately plead their claims under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6). Turpen's Motion to Dismiss alleges various deficiencies in the Plaintiffs' Complaint and argues dismissal is appropriate under Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012.[2]

## APPLICABLE STANDARD

In reviewing the Motion to Dismiss under Rule 12(b)(6), the Court must accept all well-pled factual allegations in the Complaint as true and construe the Complaint in

---

[1] ECF Nos. 7, 8, 9.

[2] Unless otherwise noted, all references to "Section," "§," "Bankruptcy Code" and "Code" and "Rules" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.* and the Federal Rules of Bankruptcy Procedure, Rule 1001, *et seq.*

favor of the Plaintiffs.[3]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[4]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5]  The critical question is, "assum[ing] the truth of all well-pleaded facts ... and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint "'raise[s] a right to relief above the speculative level.'"[6]

## BACKGROUND

According to the well-pled facts in the Complaint, Plaintiffs' principals, Scott Reichenberg ("**Reichenberg**") and Neil Littmann ("**Littmann**"), are long-time business associates of Turpen.  They have worked together on various real estate projects over the last 20+ years.  Plaintiffs are each limited liability companies that Reichenberg and Littmann formed between 2015 and 2020 to acquire, remodel, lease, manage, and eventually sell a medical office building property.  Turpen, through two corporate entities he owns, Centum Construction, Inc. and Centum Health Properties, Inc. (collectively, the "**Centum Entities**"), provided various services to those projects, including construction management, property management, and leasing services.  As part of those services, Turpen had access to the Plaintiffs' bank and financial accounts and used accounting software called Yardi.  The parties had an agreed-upon system for approving expenses under which Turpen and/or the Centum Entities would submit requests through the Yardi system, and Reichenberg and Littmann would approve or deny the requests on behalf of Plaintiffs or request additional information.

According to the Plaintiffs, Turpen initiated a scheme beginning in mid-2023 where he bypassed the Yardi system and other internal control systems to withdraw money from Plaintiffs' accounts and lines of credit and diverted those funds to the Centum Entities without approval or knowledge of Plaintiffs.  Turpen used his access to submit invoices for work that was never performed and to receive payment, and to submit invoices for subcontractors whom he then failed to pay.  He also caused funds to be transferred from Plaintiffs' accounts to the Centum Entities without approval for so-called "prepayments" for work that had not occurred.  Plaintiffs eventually discovered the irregularities and initiated a forensic audit.  That audit revealed approximately $3 million to $7 million in transactions that could not be accounted for.  During the audit, Turpen sent a letter acknowledging serious accounting problems involving the Centum Entities.  Eventually, Turpen resigned from all his duties.

---

[3] Ash *Creek Mining v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992).

[4] *Duran v. Carris*, 238 F.3d 1268, (10th Cir. 2001) (quotation omitted).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[6] *Dias v. City & County of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

The Complaint alleges these activities caused Plaintiffs damages of an unknown amount and that those damages should be deemed nondischargeable under § 523(a)(2)(A) as a debt obtained by false pretenses, actual fraud and/or fraudulent misrepresentations; as debt for embezzlement, larceny and/or defalcation while acting in a fiduciary capacity under § 523(a)(4); and a debt for willful and malicious injury under § 523(a)(6). Turpen contends Plaintiffs have failed to state a claim under any of these subsections of § 523(a).

## DISCUSSION

A.   § 523(a)(2)(A)

In his Motion to Dismiss, Debtor contends Plaintiffs failed to sufficiently allege a claim under § 523(a)(2)(A) because the Complaint lacks a description of any specific false representations he makes. Turpen argues the Complaint fails to describe the "who, what, when, where, and how" of the alleged misrepresentations as required by Fed. R. Civ. P. 9(b).

Although Turpen's Motion is focused on Plaintiffs' false representation claim, the Complaint alleges Turpen committed all three types of fraud specified in § 523(a)(2)(A)—false representations, false pretenses, and actual fraud. For the latter two types (false pretenses and actual fraud), allegations of affirmative misrepresentations are not required to state a claim.[7] Instead, false pretenses can include conduct and material omissions.[8] False pretenses have been defined as "any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor."[9] Actual fraud does not have a precise definition and can involve any manner of fraudulent conduct and schemes designed to deprive or cheat another of property or a legal right.[10]

Whatever the type of fraud, the Complaint must meet the requirements of Rule 9(b), which provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[11] The purpose behind the heightened pleading standard in Rule 9(b) is to "afford a defendant fair

---

[7] *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 355, 361 (2016); *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223-24 (10th Cir. BAP 2013).

[8] *In re Sturgeon*, 496 B.R. 215, 223 (10th Cir. BAP 2013).

[9] *Id*.

[10] *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 690 (10th Cir. BAP 2013); *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. at 360 ("Although 'fraud' connotes deception or trickery generally, the term is difficult to define more precisely."),

[11] Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009; *Tague & Beem, P.C. v. Tague (In re Tague)*, 137 B.R. 495, 500 (Bankr. Colo. 1991).

notice of the plaintiff's claims and of the factual ground supporting those claims."[12]  It requires a complaint to contain the "who, what, where, when, and how" of the alleged fraud.[13]  However, "the requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct.' "[14]  "Thus, it is not necessary that a plaintiff plead each fraudulent detail, so long as the circumstances constituting fraud have been set forth adequately."[15]  "[T]he who, what, when, and where aspects of the fraud need not be related with exact details in the complaint, as a journalist would hope to relate them to the general public. That is, it is only necessary to set forth a basic outline of fraud to alert the defendant of the purported fraud he is defending against."[16]

In this case, the Complaint adequately describes the "who, what, when, where, and how" of Turpen's alleged false pretenses and actual fraud.  The Complaint describes the overall scheme that occurred in the latter part of 2023, by which Turpen allegedly bypassed control processes to transfer funds from Plaintiffs' accounts to the Centum Entities without Plaintiffs' approval or knowledge.  This included approving payments and "prepayments" without an invoice, submitting false invoices for work not performed, and submitting invoices for subcontractors who were not paid.  These transactions were identified in the forensic audit, of which Turpen admits he was aware and participated in, at least initially.  Indeed, Turpen states in his Motion to Dismiss that he met with Plaintiffs' representatives to discuss accounting problems identified in the audit.  Although the Complaint does not contain granular information such as the dates of every false invoice or unauthorized transfer, the detail is sufficient to put Turpen on notice of the circumstances of the alleged fraudulent scheme.

The same is true of Plaintiffs' fraudulent misrepresentation claim.  The only misrepresentations alleged by Plaintiffs are in the form of false invoices submitted by Turpen via the Centum Entities for payment.   Again, Plaintiffs do not provide specific invoice numbers and dates.  However, there are sufficient descriptions of the types of fraudulent invoices and the context of the overall fraudulent scheme to put Turpen on notice of the fraudulent representations alleged against him.[17]  Given Turpen's admitted involvement with the audit, it cannot be seriously contended that he does not know the fraudulent acts with which he is being accused.  The Court therefore concludes

---

[12] *Clinton v. Security Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023) (citing *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016)).

[13] *Id*. at 1277.

[14] *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir.1997).

[15] *Fusion Industries, LLC v. Friday (In re Friday)*, 2025 WL 892618, at *7 (Bankr. W.D. Okla. March 21, 2025) (citing *Rezin v. Barr (In re Barr)*, 207 B.R. 168, 172 (Bankr. N.D. Ill.1997)).

[16] *Id.* (citing *New Century Bank v. Carmell (In re Carmell)*, 424 B.R. 401, 412 (Bankr. N.D. Ill. 2010)).

[17] See *Clinton*, 63 F.4th at 1280 ("[E]ven where not all of the plaintiffs' allegations are pleaded with particularity, a complaint may nonetheless satisfy Rule 9(b)'s requirements when its allegations are sufficiently particularized when *taken as a whole*." (internal citations omitted)).

Plaintiffs' § 523(a)(2)(A) claims are adequately pled.[18]  Turpen's various arguments disputing the facts alleged in the Complaint are not matters to be considered in deciding a Motion to Dismiss.[19]

**B.     § 523(a)(4)**

Plaintiff's Complaint alleges three different § 523(a)(4) claims—larceny, embezzlement, and fraud or defalcation while acting in a fiduciary capacity.

Larceny and embezzlement claims do not require proof of a fiduciary relationship.[20]  They share similar elements, with the main difference that, in embezzlement, the debtor initially acquires the property lawfully. In contrast, in larceny, the funds must originally have come into the debtor's hands unlawfully.[21]  The elements required to prove embezzlement under § 523(a)(4) are: (1) entrustment, (2) of property, (3) of another, (4) that is misappropriated (used or consumed for a purpose other than for which it was entrusted), (5) with fraudulent intent or intent to steal.[22]  Larceny requires proof that the debtor has "wrongfully and with fraudulent intent taken property from its owner."[23]

Plaintiffs' embezzlement and larceny claims are based on the same allegations as their § 523(a)(2)(A) claim.  Specifically, Plaintiffs contend Turpen, through the Centum Entities, transferred funds from the Plaintiffs' bank accounts/lines of credit without approval and diverted those funds to the Centum Entities, made payments on invoices for services not rendered, made payments made for subcontractor services that Turpen failed to remit, and used funds for purported "prepaid" future services which were never authorized.  Turpen argues the embezzlement and larceny claims are insufficient because Plaintiffs do not allege that he *personally* misappropriated any funds.  Turpen also disputes the facts alleged by Plaintiffs, contending he never enriched himself and Plaintiffs' expense, and says his prior financial disclosures to Plaintiffs prove this.

Turpen's dispute of the facts underlying the Complaint is not a valid ground for dismissal under Rule 12(b)(6).  The Court's role in deciding the Motion to Dismiss is not

---

[18] Turpen devotes one sentence in his Motion to argue that intent, reliance and damages are not adequately pled.  This argument also fails. Under Rule 9(b), fraudulent intent can be generally pled.  The Plaintiffs' justifiable reliance is plausible given the parties' twenty-year history doing similar deals together.  Damage causation is also plausible given that Plaintiffs allege Turpen and the Centum Entities have failed to account for millions of dollars transferred from Plaintiffs' accounts to the Centum Entities.

[19] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted.").

[20] *In re Wallace*, 840 F.2d 762, 765 (10th Cir.1988).

[21] *Hernandez v. Musgrave (In re Musgrave)*, 2011 WL 312883, at *5 (10th Cir. BAP Feb. 2, 2011).

[22] *Alternity Capital Offering 2, LLC v. Ghaemi (In re Ghaemi)*, 492 B.R. 321, 327 (Bankr. D. Colo. 2013).

[23] *Bombardier Cap., Inc. v. Tinkler (In re Tinkler)*, 311 B.R. 869, 876 (Bankr. D. Colo. 2004).

to weigh potential evidence that the parties might present at trial, but to assess whether the Plaintiffs' Complaint alone is legally sufficient to state a claim for which relief may be granted. Turpen's belief that he did not steal or embezzle from Plaintiffs is not a legitimate ground to dismiss Plaintiffs' § 523(a)(4) claims under Rule 12(b)(6).

To the extent Turpen is arguing he is not personally responsible for any of the alleged conduct because the Centum Entities are the responsible actors, that argument fails. Under Colorado law, "a corporate officer or agent can be held personally liable for his individual tortious acts, even though committed on behalf of the corporation, which is also held liable."[24] That an individual officer or manager was at all times acting on behalf of a corporation does not relieve the individual of liability.[25] "All that is needed for an LLC's manager or member to be personally liable for a tort is evidence the individual "was directly involved in the conduct through conception or authorization."[26] Here, the Plaintiffs have adequately alleged Turpen's direct involvement in larcenous conduct to hold him personally liable under these standards.[27]

Plaintiffs' claim for fraud or defalcation while acting in a fiduciary capacity presents a closer question. To state a claim under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, a plaintiff must allege that: (1) a fiduciary relationship existed between the debtor and the creditor, and (2) the debt owed to the creditor is attributable to a fraud or defalcation committed by the debtor in the course of the fiduciary relationship.[28] For a fiduciary relationship to exist under § 523(a)(4), there must be an express or technical trust.[29] An express trust is a trust relationship intentionally entered into by the parties. It may involve a formal declaration of trust or a situation in which the parties' intention to form a trust relationship may be inferred from the surrounding facts and circumstances.[30] A technical trust is distinguished from an express trust in that the intention of the parties is not relevant. In a technical trust, the

---

[24] *List Interactive, Ltd. v. Knights of Columbus*, 303 F.Supp.3d 1065, 1078 (D. Colo. 2018) (internal citations omitted); *Doig v. McHugh (In re McHugh)*, 2003 WL 21356761, at *3 (Bankr. D. Colo. June 2, 2003) ("An individual is responsible for the torts which she commits regardless of whether or not the tort is committed in the course of her duties as officer or employee of a corporate entity.").

[25] *Hoang v. Arbess*, 80 P.3d 863, 868 (Colo. App. 2003).

[26] *Levin v. Five Corners Strategies, LLC*, 541 F.Supp.3d 1262, 1268 (D. Colo. 2021) (citing *Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. App. 2003)).

[27] Turpen also refers to "indemnification clauses" for managers acting in good faith in the "relevant operating agreements." Turpen does not specify which operating agreements he is referring to, nor provide any authority for why such a clause would be a basis for dismissal of any of the Plaintiffs' claims. In any event, it is unlikely that committing embezzlement, larceny or defalcation could be construed as acting in good faith.

[28] *Fowler v. Young (In re Young),* 91 F.3d 1367, 1371 (10th Cir. 1996).

[29] *Fowler,* 91 F.3d at 1371.

[30] *In re Steele*, 292 B.R. 422, 427 (Bankr. D. Colo. 2003).

trust obligations are imposed on the parties.[31]  Whether a debtor is a fiduciary is a matter of federal law, although state law is relevant to the inquiry.[32]

In this case, Plaintiffs allege an express trust existed between Plaintiffs and Turpen "via the writings in place between the parties."[33]  "An express trust requires the intent to create a trust, a clearly defined trust res, and specific trust duties."[34]  Under Colorado law in particular, "creation of an express trust requires unequivocal and unambiguous language or conduct."[35]  Fiduciary relationships "are not created solely by virtue of two parties entering into a 'mere contractual relationship' . . . [a]n express trust is created when parties *expressly* create one."[36]  Although specific formal or technical words are not necessary, "the fact that a document makes no mention of a 'trust' is significant in determining whether a trust was intended, particularly where the document is drafted by an attorney."[37]  In this case, Plaintiffs' Complaint provides no details about the contractual language they believe created an express trust, the trust res, or Turpen's alleged specific trust duties.  The Plaintiffs' mere reference to "writings" between the parties is insufficient to plead the existence of an express trust.

Plaintiffs also allege the existence of a technical trust between Turpen and Plaintiffs based on "Colorado law." [38]  A technical trust can arise under a state statute so long as the statute defines a trust res, establishes trustee duties, and imposes the trust prior to any wrongdoing that creates the obligation.[39]  However, Plaintiffs do not cite any Colorado state statute.  Instead, Plaintiffs' Complaint merely cites the case of *Hart v. Colorado Real Estate Commission*, 702 P.2d 763 (Colo. App. 1985), which states that in a principal-agent relationship, "it is the duty of an agent to act with the utmost good faith and loyalty on behalf of his principal."[40]  While Colorado law does recognize that agents owe principals a general fiduciary duty, that duty is based on the parties' "relationship of trust, confidence, and reliance."[41]  In the bankruptcy context, the Tenth Circuit has been clear that general fiduciary duties of confidence, trust, loyalty, and good faith, are

---

[31] *Id*.

[32] *Id*.

[33] Complaint, ECF No. 1, ¶ 72.

[34] *Edwards v. Emberton (In re Emberton)*, 501 B.R. 392, 398 (Bankr. D. Colo. 2013).

[35] *In re Emberton*, 501 B.R. at 398 (citing *Morgan v. Wright*, 399 P.2d 788, 790-91 (1965)).

[36] *Cago, Inc. v. Slade (In re Slade)*, 471 B.R. 626, 639 (Bankr. D.N.M. 2012), *abrogated on other grounds* by *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018).

[37] *In re Emberton*, 501 B.R. at 398 (citing *Denver Chapter No. 145, Order of Ahepa v. Mile Hi City Chapter No. 360*, 469 P.2d 740, 742 (1970)).

[38] Complaint, ECF No. 1, ¶ 73.

[39] *Ibdaiwi v. Sawaged (In re Sawaged)*, 2011 WL 880464, at *3 (10th Cir. BAP March 15, 2011); *In re Emberton*, 501 B.R. at 398.

[40] 702 P.2d 763, 765 (Colo. App. 1985).

[41] *MDM Group Associates, Inc. v. CX Reinsurance Co. Ltd.*, 165 P.3d 882, 888 (Colo. App. 2007).

insufficient to establish a fiduciary relationship for purposes of § 523(a)(4).[42] Other courts have specifically held that a principal-agent relationship, by itself, is not sufficient to meet § 523(a)(4) fiduciary duty requirement.[43] Here, the Complaint's reference to "Colorado law" and general principal/agent law is insufficient as a matter of law to plead a technical trust. Accordingly, the Court will dismiss the Sixth Cause of Action for fraud or defalcation while acting in a fiduciary capacity, with leave to amend.

### C.      § 523(a)(6)

Finally, Turpen seeks dismissal of Plaintiffs' § 523(a)(6) claim for willful and malicious injury. Turpen contends that Plaintiffs have failed to allege an intentional act with the purpose of causing injury. That is not accurate. The Plaintiffs' § 523(a)(6) claim is based on the same allegations as their § 523(a)(2) and (a)(4) claims. The Complaint alleges Turpen's conduct in submitting false invoices and disabling various accounting controls to make transfers to himself and/or the Centum Entities without permission was deliberate and done with actual intent to cause financial injury to Plaintiffs. This is sufficient to state a colorable claim under § 523(a)(6).[44] Turpen's assertions that he did not act with malice are factual disputes that are inappropriate for consideration on a motion to dismiss.

### D.      Warning to Turpen Concerning Artificial Intelligence

Turpen has elected to proceed in this case without counsel. He may do so, but he is warned that he will be held to the same standards as parties who appear with counsel. Turpen's Motion to Dismiss contains what appears to be prompts from some artificial intelligence guidance.[45] He also cited a fake case: *In re Raspanti*, 414 B.R. 263 (Bankr. D. Colo. 2009). Turpen states the incorrect citation was an error, but he is cautioned that he, like all the attorneys who appear in this Court, is subject to all the requirements of Fed. R. Bankr. P. 9011. The Court further cautions Turpen that the use of artificial intelligence for research or drafting of pleadings, whether by attorneys or pro

---

[42] *Fowler,* 91 F.3d at 1371.

[43] *McCreary v. Kichler (In re Kichler)*, 226 B.R. 910, 913 (Bankr. D. Kan. 1998) ("Unless there exists some additional fact, section 523(a)(4), as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of agents, bailees, [or] brokers."); *In re Hutton*, 117 B.R. 1009, 1012 (Bankr. N.D. Okla. 1990) ("The fiduciary relationship of Code section 523(a)(4) does not encompass ordinary commercial relationships such as those of a principal/agent or debtor/creditor."); *Commonwealth Land Title Co. v. Blaszak (In re Blaszak*, 397 F.3d 386, 391 (6th Cir. 2005) ("[A]n agent-principal relationship standing alone is insufficient to establish the type of fiduciary duty contemplated by § 523.").

[44] Section 523(a)(6) claims are not subject to the requirements of Rule 9(b). *Tague & Beem, P.C. v. Tague (In re Tague)*, 137 B.R. 495, 501 n.7 (Bankr. D. Colo. 1991).

[45] Motion to Dismiss at 3 ("If we assume arguendo (for the sake of argument) that you did act in a fiduciary capacity, the strategy should shift away from challenging the existence of a fiduciary duty and instead attack the lack of defalcation, embezzlement, or larceny. Here's a revised version of that paragraph with this shift in emphasis: Revised § 523(a)(4) Argument (Assuming Fiduciary Capacity).").

se parties, is subject to Rule 9011 compliance, and the failure to ensure a citation exists and stands for the proposition for which it is cited may be sanctionable.[46]

## CONCLUSION

For all the reasons set forth above, the Court ORDERS that Defendant's Motion to Dismiss is GRANTED in PART and DENIED IN PART.  The Motion to Dismiss is DENIED as to claims 1-5 and 7.  The Motion to Dismiss is Granted as to Claim 6 (Fraud or Defalcation while Acting in a Fiduciary Capacity).  Plaintiffs are granted leave to file an amended complaint to address the deficiencies in Claim 6.

Dated: February 17, 2026                BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court

---

[46] *See Coomer v. Lindell*, 2025 WL 1865282, at *3 and *8 (D. Colo. Jul. 7, 2025).